IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROGER JORDAN, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | CASE NO.: 2:09-cv-598-MEF |
| ) | |
| EQUITY GROUP EUFAULA DIVISION, ) | (WO) |
| LLC, *et al.*, ) | |
| ) | |
| DEFENDANTS. ) | |

## **MEMORANDUM OPINION AND ORDER**

### **INTRODUCTION**

This case arises out of Defendants' decision to terminate Plaintiff's employment after a tragic and accidental non-workplace injury that rendered Plaintiff quadriplegic. Plaintiff initiated this action in the Circuit Court of Barbour County, Alabama, Clayton Division, alleging that the termination was contrary to law. Defendants filed a Notice of Removal in this Court, but the Court remanded the case to Barbour County Circuit Court upon motion by Plaintiff. The litigation progressed naturally in state court, and, based on that progression, Plaintiff amended his Complaint in advance of trial. Defendants then filed a second Notice of Removal in which they claim that one particular amendment to the state court Complaint creates federal question jurisdiction over part of the case. Plaintiff strongly contests this position and has moved the Court to remand the case a second time. Therefore, the case is presently before the Court on the Emergency Motion to Remand and Motion for Sanctions (Doc. # 13), which Plaintiff filed on June 29, 2009. The Court has carefully considered the

arguments of the parties, the applicable authorities, and the prior proceedings in this case, both in state and federal court. For the reasons set forth below, the Court finds that the Motion is due to be DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Original Complaint

Plaintiff Roger Jordan ("Jordan") filed the original Complaint in the Circuit Court of Barbour County, Alabama, Clayton Division, in January, 2008. Jordan was, prior to the termination that gave rise to this litigation, a "live hanger" at defendant Equity Group's poultry processing plant. As detailed more fully in this Court's prior Memorandum Opinion and Order, *Jordan v. Equity Group Eufaula Division*, No. 2:08-cv-152, 2008 WL 4671781 (M.D. Ala. Oct. 21, 2008) (Fuller, C.J.), the original Complaint stated two counts. Count I claimed that Defendants committed the state law tort of outrage by terminating Jordan's employment the way they did. That Count is not meaningfully implicated in this second removal. Count II was a state law claim that Defendants carried out the termination in violation of the public policy of the State of Alabama and in contravention to the provisions of Equity Group's employee handbook. Because of their particular significance, the relevant allegations from Count II are worth setting out verbatim, with appropriate emphasis placed on portions of paragraph three:

> 1. Plaintiff realleges all previous allegations of this Complaint.
>
> 2. Defendants' termination of Plaintiff's employment on November 21, 2007, was violative of public policy.

2

>3. Defendants' termination of Plaintiff's employment on November 21, 2007, **was violative of the provisions of Defendant EQUITY GROUP's employee handbook.**
>
>4. As a proximate result of Defendants' wrongful discharge, Plaintiff has been damaged as previously described herein.

(Doc. # 13-2 2-3.)  Nowhere does the Complaint invoke an express labor contract or collective bargaining agreement ("CBA") that governed the terms of Jordan's employment (or the terms on which Eufaula Group could terminate him).

### B. The First Removal and Remand

Defendants removed the case from state court to this Court; the Clerk randomly assigned the case to the undersigned and gave it the case number 08-cv-152-MEF. Defendants argued that this Court had jurisdiction over all of the above-detailed claims. Their jurisdictional arguments were founded on the accurate premise that the Labor Management Relations Act ("LMRA") preempts all state law claims by employees against employers that are not independent of a labor contract between the employer and a labor organization representing employees.  Defendants argued that because neither the outrage claim nor the wrongful discharge claim was independent of the labor contract, the LMRA preempted the state law claims and provided a basis for federal question jurisdiction.

First, Defendants claimed that a determination of the outrage claim depended on an interpretation of the labor contract because the termination occurred in the employment context.  Upon Plaintiff's Motion to Remand, the Court rejected this argument as a basis for jurisdiction, saying "Plaintiff's outrage claim is not 'inextricably intertwined' with the CBA

3

because it alleged conduct 'so outrageous' that it is obvious without reference to the agreement." *Jordan*, 2008 WL 4671781, *3. Second, Defendants argued that Plaintiff's wrongful discharge was dependant on the terms of the labor contract. With respect to the argument that the termination violated the public policy of Alabama, the Court held that because the allegation was for a breach of the public policy of Alabama, which did not require an interpretation of the contract, the LMRA did not preempt the claim for wrongful discharge based on public policy concerns. Defendant's other argument regarding the wrongful termination claim was that the mention of the employee handbook in the Complaint created a breach of contract claim that was preempted by the LMRA, because, as the Court's opinion noted, "preemption is appropriate when an employee alleges a violation of a labor contract." *Id.* at *4 (citing *Moss v. Bell South Telecomm., Inc.*, No. 05-12781, 2005 WL 2901904, at *1 (11th Cir. Nov. 4, 2005)). This Court noted that "Plaintiff does not allege breach of contract or the CBA" and held that "the Court is unwilling to convert Plaintiff's state law tort claim into a federal contract question." *Id.* On these bases, the Court remanded the case to state court.

### C. The Amended Complaint and Second Removal

Following some particular depositions Defendants detail in their opposition to the Motion to Remand,[1] Jordan filed an Amended Complaint on June 12, 2009. In particular,

---

[1] Among the excerpts are discussions about the alleged fact that the terms of the labor contract governed Jordan's termination. The questioner is counsel for Jordan:

4

he amended Count II (the original version was quoted above), to read as follows, again with emphasis where appropriate:

> 1. Plaintiff realleges all previous allegations of this Complaint.
>
> 2. Defendants' termination of Plaintiff's employment effective November 21, 2007, was violative of public policy.
>
> 3. Defendants' termination of Plaintiff's employment effective November 21, 2007, was violative of **EQUITY GROUP's contractual agreements with an on behalf of the Plaintiff.**
>
> 4. As a proximate result of Defendant's wrongful discharge, Plaintiff has been damaged as previously described herein.

(Doc. # 13-7 4). Defendants removed the case a second time on June 24, 2009, arguing that the altered language in Count II stated a claim for breach of the labor contract by Defendants and that, because a claim for breach of a labor contract is subject to removal because of

---

> Q. You agree, don't you, Ms. Gilmore, that the terms of Roger Jordan's employment, including the termination of his employment, are governed by Plaintiff's Exhibit Number 2, the agreement between the union and the plant?
> A. Yes, ma'am.

(Doc. # 16-3 3.)

> Q. Haven't you already identified the union agreement as the employment contract for Roger Jordan?
> A. Yes, this is the union contract that Roger Jordan –
> Q. Haven't you already identified that as his employment contract?
> A. Yes, this is the union agreement that he is up under.

(Doc. # 16-3 5.)

LMRA preemption, this case became removable once Jordan asserted a claim for breach of the labor contract. (Doc. # 4.)

### D. The Instant Motion to Remand

Jordan filed an Emergency Motion to Remand to State Court and Motion for Sanctions on June 29, 2009. (Doc. # 13.) Jordan vigorously contests the propriety of the second removal, even going so far as to call it sanctionable "gamesmanship and delay tactics at their purest form." (Doc. # 13 p. 1.) The crux of Jordan's argument is that "the second Notice of Removal is predicated solely on the same grounds as their first Notice of Removal," which this Court previously remanded. (Doc. # 13 p. 1.) In response to Defendants' argument that the language in the Amended Complaint states an allegation that Equity Group violated the labor contract, Johnson argues that he "is not alleging violations of a labor contract or the CBA." (Doc. # 13 p. 6.) Jordan also argues that Defendants' argument that the wrongful termination claim implicates the labor contract is tantamount to a claim that the prior Order remanding the case to state court was in error. Hence, Jordan argues, the Court should remand the case because the law is quite clear that a party may not repeatedly remove a case on the same basis.

Defendants oppose the Motion to Remand and counter Jordan's arguments by claiming that the predicate for the second Notice of Removal is "a crucial new allegation made by Jordan in his First Amended Complaint." (Doc. # 16 p. 1.) They argue that the new allegation detailed in the preceding section makes removal proper for the reasons they stated

in their Notice of Removal. Therefore, they urge the Court to deny the Motion to Remand and exercise federal question jurisdiction over the wrongful termination claim insofar as it implicates the labor contract and supplemental jurisdiction over the balance of the case. Accordingly, the Motion to Remand is now under submission and ripe for disposition.

## DISCUSSION

### A. Legal Framework

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution and the Congress of the United States. *Kokkonen*, 511 U.S. at 377.

When a case is originally filed in state court, a party may remove it if the case originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1207 (11th Cir. 2007), *cert. denied*, 128 S. Ct. 2877 (2008) (holding that "the party seeking a federal venue must establish the venue's jurisdictional requirements" and that removing defendants bear that burden in the context of a motion to remand). The non-moving party may move for remand, however, which motion the court should grant if "it appears that the district court lacks subject matter jurisdiction." *See* 28 U.S.C. § 1447(c). Because removal jurisdiction raises significant federalism concerns, "removal statutes are construed narrowly; where plaintiff and defendant clash

about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095.

## B. Analysis

This Court has federal question jurisdiction because of LMRA preemption; removal, therefore, was appropriate. Removal based on federal question jurisdiction, as in the instant case, is generally governed by the well-pleaded complaint rule. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908). Following this rule, a court looks to the face of the plaintiff's properly pleaded complaint in order to determine whether a state law claim presents a federal question. *See id*. The doctrine of complete preemption, however, exists as an exception to the well-pleaded complaint rule. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). Under this doctrine, certain state law claims brought in state court may be removed to federal court under § 1441(a) as containing a federal question even where the face of the plaintiff's properly pleaded complaint makes no reference to any issues of federal law. The reasoning behind the doctrine is that the preemptive force of certain federal statutes is so strong that their implication in a case can convert an ordinary state claim into a statutory federal claim. *See id.* Hence, removal is generally appropriate "when a federal statute wholly displaces the state law cause of action through complete preemption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Pursuant to § 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties . . . " 29 U.S.C. § 185(a). The

Supreme Court has held that this section "has such extraordinary preemptive force as to be an appropriate federal statute under which to find complete preemption." *Allis-Chalmers v. Lueck*, 471 U.S. 202, 211 (1985).  Hence, it is well established that a state law claim by an employee against an employer is preempted by § 301 unless it exists independently of an applicable labor contract. *See, e.g., Allis-Chalmers*, 471 U.S. at 218; *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 (1987); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408-09 (1988); *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 370-71 (1990). A state law claim is not sufficiently independent when it requires an interpretation of the labor contract. *See* 471 U.S. at 218, 481 U.S. at 859; *see also* 486 U.S. 408-09 (". . . as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes"). Using this legal framework, the Court must determine whether § 301 of the LMRA preempts Jordan's state law claim for wrongful termination or whether that claim is sufficiently independent of the labor contract and may be remanded back to state court.  In its prior opinion, the Court held that the invocation of an employee handbook which specifically stated that its terms were non-contractual and that employment was at will unless a separate contract applied did not require the interpretation of a labor contract and was independent of any labor contract for LMRA purposes.  The amendments to the Complaint quite obviously alter this analysis.

The claim Defendants argue is preempted is one for wrongful discharge (1) in violation of the public policy of the state of Alabama and (2) in violation of "Equity Group's

9

contractual agreements with and on behalf of Plaintiff." (Doc. # 13-3 pp. 2-3.) Defendants argued in the first Notice of Removal that the public policy ground required interpretation of the labor contract. The Court rejected that argument once, and Defendants do not advance it again. Instead, they argue that, because of the invocation of "contractual agreements with and on behalf of Plaintiff," a substantial part of the wrongful termination claim is bound up with an interpretation of the labor contract. The Court agrees. It is difficult to discern how the claim could be adjudicated without close and constant reference to the "contractual agreements" at issue, namely the labor contract—made on behalf of Jordan—between Equity Group and the union. In this way, then, the wrongful termination claim is not independent of the labor contract, but rather is inextricably intertwined with it. Indeed, according to the language of the Amended Complaint, this part of the wrongful termination claim appears to *be* a claim for breach of the labor contract. Therefore, § 301 of the LMRA completely preempts the second part of the state law wrongful termination claim. This creates federal removal jurisdiction over part of the case, and the Court can and will exercise supplemental jurisdiction over the pendent clams pursuant to its authority under 28 U.S.C. § 1367.

Jordan makes two arguments in favor of remand, and Defendants disagree on both counts. First, Jordan summarily argues that LMRA preemption does not apply because the Amended Complaint does not state a claim for breach of the labor contract: "First and foremost, Plaintiff is not alleging violations of a labor contract or the CBA. Like the original Complaint, the Amended Complaint does not allege a violation of the CBA." (Doc. # 13 p.

6.) That is all Jordan offers to explain the apparent claim for breach of the labor contract. It is impossible to square Jordan's contention that the Amended Complaint does not allege violations of a labor contract with the plain language of the Amended Complaint. The Amended Complaint changed "Defendant's termination of Plaintiff . . . was violative of the provisions of Defendant Equity Group's employee handbook" (Doc. # 13-2 pp. 2-3) to "Defendant's termination of Plaintiff . . . was violative of the provisions of Defendant Equity Group's contractual agreements with and on behalf of the Plaintiff" (Doc. # 13-7 p. 4). Given that the only contract Equity Group made with or on behalf of the Plaintiff is the labor contract, removal was appropriate. *See Jordan*, 2008 WL at *4 ("preemption is appropriate when an employee alleges a violation of a labor contract"). While this conclusion is plain from the face of the Amended Complaint, it is corroborated by the deposition testimony provided by Defendants, which indicates that Jordan was exploring whether his termination violated the labor contract shortly prior to amending the Complaint.[2]

Second, Jordan argues that the second removal is improper, its merits aside. He argues that the prior decision to remand "may only be revisited when intervening events justify that step," and that a second removal is only permissible "on grounds different than the first removal." (Doc. # 13 p. 6) (quoting *Midlock v. Apple Vacations W., Inc.*, 406 F.3d

---

[2] To be clear, the Court's jurisdictional determination is founded upon the face of the Amended Complaint alone, as it must be. *See Lowry v. Al. Power Co.*, 483 F.3d 1184, 1214 (11th Cir. 2007) ("In assessing whether removal was proper . . . , the district court has before it only the limited universe of evidence available when the motion to remand is filed—the notice of removal and accompanying documents.")

453, 457 (7th Cir. 2005)). As a statement of law, these propositions are correct. As arguments against the second removal of this case, these propositions are ineffectual. As Jordan points out, where "subsequent pleadings or events reveal a new and different basis for removal" a second removal may be permitted. *Nicholson v. Nat'l Accounts, Inc.*, 106 F. Supp. 2d 1269, 1271 (S.D. Ala. 2000). The Court previously determined the case was not within its removal jurisdiction, but, even in such circumstances, "if subsequent pleadings or conduct by the parties or various other circumstances brings a case that was not previously removable within the removal jurisdiction of the federal courts, a second notice of removal is permissible." 14C Charles Allen Wright, *et al*., Federal Practice & Procedure § 3739 (2009). The Amended Complaint is a "subsequent pleading" and it makes clear for the first time that the LMRA preempts some of Jordan's claims.[3] In short, the Amended Complaint is a "new and different basis for removal." *Nicholson*, 106 F. Supp. 2d at 1271. Therefore, the second Notice of Removal was proper.[4]

---

[3]Plaintiff argues in an unsolicited Reply (Doc. # 24) that because Defendants rely upon depositions taken more than thirty days prior to removal, removal was untimely. In other words, Plaintiff argues that if it was possible to ascertain from the depositions that the action became removable, the removal statute required Defendants to file a Notice of Removal within thirty days of the depositions. By this logic, the Notice was six days late. However, this deposition testimony, when given, was mere "evidentiary support for the argument that the previous remand order was incorrect." *Nicholson*, 106 F. Supp. 2d at 1272. As Plaintiff points out, this is not an adequate basis for a second removal. *See id.* In order to avoid sanctions and comply with the law, Defendants needed to wait for a "subsequent pleading" before attempting to remove the case the second time. *See id.* at 1271. Therefore, the second Notice of Removal was timely.

[4]The Court also finds that the imposition of sanctions would be inappropriate because the removal was meritorious rather than frivolous.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Jordan's Emergency Motion to Remand and Motion for Sanctions (Doc. # 13) is DENIED.

DONE this the 31st day of July, 2009.

                                              /s/ Mark E. Fuller
                                 CHIEF UNITED STATES DISTRICT JUDGE